O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF EDWARD RONALD HUGHES, <br><br> A fugitive from the government of Mexico. | Case No. EDCV 12-1831-JGB (MLG) <br><br> MEMORANDUM AND ORDER GRANTING REQUEST FOR EXTRADITION |

Before the Court is a request for extradition brought by the Government of Mexico ("Mexico"), the requesting state, against Edward Ronald Hughes. Pursuant to an extradition treaty between the United States and Mexico, the United States acts on behalf of Mexico in this matter. *See* Extradition Treaty Between the United States of America and Mexico, May 4, 1978, Art. 13(3), 31 U.S.T. 5059; TIAS 9656 ("Extradition Treaty" or "Treaty").

**I.   Background**

    **A.   Procedural History**

On October 23, 2012, a complaint was filed by the United States alleging that Edward Ronald Hughes was the subject of an extradition

request made by Mexico. *United States v. Hughes*, Case No. EDCV 12-0333M. Mexico's formal extradition request for Hughes's surrender, dated April 3, 2012, was filed as an attachment to the complaint. On September 17, 2012, a warrant was issued under 18 U.S.C. § 3184 for the arrest of Hughes. Pursuant to the warrant, Hughes was arrested on October 8, 2012. Hughes had his initial appearance before United States Magistrate Judge Sheri Pym on October 9, 2012. He has been detained pending the extradition hearing. Hughes, a United States citizen, is accused by Mexico of having committed the crime of aggravated homicide in Mexico.

Hughes filed his Opposition to Extradition ("Opposition") on January 18, 2013, and on February 8, 2013, the United States filed a Reply ("Reply"). An extradition hearing was held on March 12, 2013. After considering the parties' respective papers, evidence, and oral arguments, the matter was taken under submission. For the reasons discussed below, the Court issues this Memorandum and Order certifying Hughes's extradition to Mexico.

**B.   Factual History**[1]

In February 1994, Hughes and a business associate, Brian McCarthy, traveled to Mexico, ostensibly to conduct business on behalf of Automation Software, Inc ("ASI"), a company based in Rhode Island, of

---

[1] This brief summation of facts is taken from the Memorandum Opinion and Order granting Petitioner's habeas corpus petition in *Hughes v. Slade*, Case No. CV 03-3857-MLG, and from the opinion of the United States Court of Appeals for the First Circuit, affirming Petitioner's conviction of the offense of Interference with Commerce by Threat or Violence, 18 U.S.C. § 1951. *United States v. Hughes*, 211 F.3d 676, 679 (1st Cir. 2000). The facts are set forth in greater detail in the documentary evidence submitted in support of Mexico's formal request for extradition of Hughes (Diplomatic Note 02301) dated April 3, 2012, attached as Exhibit 1 to the Government's Request for Extradition.

which both men were officers. On February 8, 1994, Hughes returned to ASI's office in the United States with what he claimed was a "ransom" demand. Hughes told company officials that McCarthy had been abducted in Mexico on February 6, 1994. He informed them that the kidnappers were demanding a ransom of one million pesos, and that Hughes was to return with the money or McCarthy would be killed. On February 7, 1994, while preparations were being made to deliver the ransom, but before any ransom had been paid, McCarthy's body was found in a shallow grave on a road between Mexico City and San Luis Potosi.

On February 9, 1994, Hughes resigned his position with ASI. He sold his Rhode Island home in March 1994 and returned to Mexico. Nine millimeter shell casings found near McCarthy's body were later determined to match shell casings found on Hughes's property in Rhode Island. Firearm transaction records revealed that Hughes had purchased a nine millimeter handgun in September 1993.

On May 17, 1994, a warrant for Hughes's arrest was issued by the United States District Court for the District of Rhode Island. The warrant was based on a complaint charging Petitioner with attempted extortion in violation of 18 U.S.C. § 1951. On June 14, 1994, the United States submitted an extradition request to Mexico, asking that Hughes be returned to the United States to stand trial on federal extortion and related charges.

On July 7, 1994, Hughes was taken into custody by Mexican officials. On October 10, 1994, the Government of Mexico granted the United States' request to extradite Hughes, but stayed extradition until the criminal investigation into the murder of Brian McCarthy and any possible prosecution was completed.

//

On September 21, 1995, Mexico issued an arrest warrant for Hughes for the homicide of Brian McCarthy. On April 29, 1997, Hughes was acquitted of the murder charge in Mexico. Hughes was released on bail on July 4, 1997, but was required to remain under house arrest while the prosecution's appeal of his acquittal was pending, a procedure permitted under Mexican law. On February 25, 1998, the decision of the trial court was reversed by a Mexican appellate court. Hughes was found guilty of McCarthy's murder and sentenced to 19 years in prison. Sometime during the pendency of these proceedings, Hughes returned to the United States. Hughes was never returned into the custody of Mexican authorities, and remains a fugitive from Mexican justice.

Meanwhile, on September 11, 1996, an indictment was returned in the United States District Court for the District of Rhode Island charging Hughes with Interference with Commerce by Threat or Violence, in violation of 18 U.S.C. § 1951. An arrest warrant was issued that same day. In May 1998, Hughes surrendered himself to federal authorities in Rhode Island. On September 24, 1998, following a jury trial, Hughes was convicted of the charge contained in the indictment. On February 8, 1999, he was sentenced to 20 years imprisonment to be followed by three years of supervised release.

**II.  Discussion**

    **A.  Legal Standard**

Extradition from the United States is governed by 18 U.S.C. § 3184, which confers jurisdiction on "any justice or judge of the United States" or any authorized magistrate judge to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation. The purpose of the extradition hearing is to

4

determine whether a person arrested pursuant to a complaint in the United States on behalf of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. *See* 18 U.S.C. § 3184. In order to surrender the person to the requesting country, the Court must determine that each of the following requirements have been met: (1) the extradition magistrate has jurisdiction to conduct the extradition proceedings; (2) the extradition magistrate has jurisdiction over the fugitive; (3) an extradition treaty is in full force and effect; (4) the crime is extraditable (the dual criminality requirement); (5) there is probable cause to believe that the individual appearing before the magistrate judge has committed the crimes alleged by the requesting nation (the probable cause requirement); and (6) there are no applicable treaty provisions which bar the extradition for any of the charged offenses. *See Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000); *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1009-10 (9th Cir. 2000); *Quinn v. Robinson*, 783 F.2d 776, 783, 790 (9th Cir. 1986); *Zanazanian v. U.S.*, 729 F.2d 624, 626 (9th Cir. 1984).

If these requirements are met, the extradition magistrate must certify the individual as extraditable to the Secretary of State and issue a warrant of commitment. *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003). Once such a certification has been made, "it is the Secretary of State, representing the executive branch, who determines whether to surrender the fugitive." *Blaxland*, 323 F.3d at 1208; 18 U.S.C. § 3184. Extradition is a matter of foreign policy entirely within the discretion of the executive branch, and "the executive branch's ultimate decision on extradition may be based on a variety of grounds,

ranging from individual circumstances, to foreign policy concerns, to political exigencies." *Blaxland*, 323 F.3d at 1208. Thus, the authority of the extradition magistrate is limited to the judicial determination required by section 3184.

### B. The Judicial Officer is Authorized to Conduct the Extradition Proceedings

Pursuant to section 3184 and General Order No. 01-13,[2] this Court has jurisdiction to preside over the extradition of Hughes. This issue was not challenged by Hughes.

### C. The Court Has Jurisdiction Over the Fugitive

Pursuant to section 3184, this Court has jurisdiction over Hughes, who is "found within [this] judicial district," because he was arrested, and is presently detained, in the Central District of California. This issue was not challenged by Hughes.

### D. There is an Applicable Treaty in Full Force and Effect

The parties do not dispute, and this Court expressly finds, an extradition treaty between the United States and Mexico is in full force and effect. *See* 18 U.S.C. § 3181 (Historical and Statutory Notes). The Treaty applies to offenses committed before and after the date it entered into force. Treaty, art. 20.

### E. Extraditable Offense - The Dual Criminality Requirement

"[U]nder the doctrine of 'dual criminality,' an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting and requested nations." *Quinn*, 783 F.2d at 786-87. The dual criminality

---

[2] United States District Court for the Central District of California General Order No. 01-13 authorizes this Court's magistrate judges to preside over "[e]xtradition proceedings pursuant to 18 U.S.C. 3181 et seq."

principle is explicitly incorporated into Article 2 of the Extradition Treaty, which provides that: "[a]n offense shall be an extraditable offense if it is punishable under the laws in both Contracting Parties by deprivation of liberty for a period of more than one year, or by a more severe penalty." Treaty, art. 2(2).

Petitioner has been convicted of the crime of aggravated homicide, in violation of Articles 126 and 131 of the Penal Code for the State of Querétaro, Mexico. This conduct, if it had occurred in the United States, would be subject to prosecution under 18 U.S.C. § 1111 (Murder) and is punishable by a term of imprisonment of over one year. Murder is listed as an extraditable offense in the Treaty's Appendix. Accordingly, the dual criminality requirement with respect to the alleged offense is satisfied.

Hughes argues that the extradition request violates Article 2 of the Treaty because there is less than six months remaining on Hughes's sentence. (Opp. to Motion for Extradition at 4.) In its judgment of conviction and sentencing decision ("Judgment"), the Chamber for the Criminal Matters of the Superior Court of Justice ("Appellate Court") sentenced Hughes to 19 years for the crime of aggravated homicide for which Mexico is seeking extradition. (Judgment, Ex. B at 76.)[3] According to Mexico, Hughes has served one year, nine months and 12 days of his 19-year sentence, specifically from September 21, 1995 (the date of his arrest on the homicide charge) to July 3, 1997 (the date he was released after his acquittal). (Judicial Record issued by the Fifth Criminal Trial Court for the Judicial District of Querétaro, dated May 23, 2007, att. as Ex. C to Opp.)

---

[3] Because the Judgment contains multiple different pagination numbers, the Court will order the pages numerically.

Hughes contends that Mexico's calculation of this time is erroneous because he should be given credit against his 19-year sentence for the following: (1) the time he spent in detention in Mexico from July 11, 1994 to September 21, 1995, as a result of the United States' extradition request; (2) the "one-to-one work credit" he allegedly received while incarcerated in Mexico from July 1994 to July 1997; and (3) the time he was in custody in the United States in connection with the extortion charge, which he claims began with his pre-trial detention on May 5, 1998, and ran until he completed his sentence for the extortion charge, for a total of 14 years and eight months in custody. (Opp. at 4.)

Hughes bases his argument that he is entitled to this credit upon the following statement in the Judgment: EDWARD RONALD HUGHES ... is criminally responsible for the commission of aggravated homicide against Brian McCarthy, for that reason he is sentenced to NINETEEN YEARS IN PRISON ...; *it shall be deducted the time he was under detention because of the incidents which originated to the current criminal case.*" (Emphasis added.) (Judgment, Ex. B at 76.)

Mexico has given Hughes credit only for the pretrial detention he served at the San José El Alto Querétaro prison ("Querétaro Prison"). Hughes contends that he also served an additional one year, two months and 10 days at the Correctional Facility at Los Mochis, Sinaloa ("Sinaloa Prison"), from July 11, 1994 until September 21, 1995, when he was transferred to Querétaro Prison. (Opp. at 4.)

Hughes is not entitled to credit for the time he spent in Sinaloa Prison awaiting extradition to the United States on the extortion charge. The language of the Judgment specifically states that the only credit that Hughes would receive would be for the time he was

imprisoned "because of the incidents which originated ... the current criminal case." (Judgment, Ex. B at 76.) The logical interpretation of the phrase "the current criminal case" solely refers to the charge of aggravated murder for which Hughes was convicted and sentenced on February 25, 1998. Thus, any time that Hughes spent in Sinaloa Prison awaiting extradition to the United States on the extortion charge would not be credited because it was not a part of "the current criminal case." Rather, the events giving rise to the extortion charge occurred after the murder and after Hughes had left Mexico and returned to the United States. Indeed, the fact that the Appellate Court gave Hughes credit for the time he was detained awaiting trial for the crime of aggravated homicide, from September 21, 1995 to July 3, 1997, and not for the time he was detained while awaiting extradition to the United States, is further evidence that Hughes's interpretation of the Judgment's language is incorrect.

Hughes also argues that he is entitled to the "one-to-one work credit" he allegedly accrued while incarcerated in Sinaloa and Querétaro Prisons from July 1994 to July 1997. (Opp. at 4.) As noted above, Hughes served one year, two months and 10 days at Sinaloa Prison and one year, nine months and 12 days at Querétaro Prison. Hughes claims that, while at Sinaloa and Querétaro, he earned a day of credit for every day that he served. (Id.) Therefore, he contends that he is entitled to credit for two years, four months and 20 days at Sinaloa Prison and three years, 6 months and 24 days at Querétaro Prison. (Id.)

However, as discussed above, Hughes is not entitled to credit for the time that he spent at Sinaloa Prison awaiting extradition to the United States. Moreover, Hughes has failed to provide any Mexican documentation or authority to support his work credit claim. Rather,

9

the only evidence Hughes provides is his own self-serving declaration that he earned "one-to-one credit time" for each day he spent at Sinaloa and Querétaro Prisons. This is clearly insufficient evidence in these circumstances.

Finally, Hughes argues that he is entitled to credit against his Mexican sentence for the time he served in the United States based upon his extortion conviction. (Opp. at 5.) Hughes contends that the sentence he served in the United States on the extortion charge arose from the same facts as the murder case, and therefore, he has already served 14 years and eight months on a charge based upon "incidents which originated the current criminal case." (Id.) Hughes's interpretation of the language of the Judgment is illogical and unreasonable. A plain interpretation of the term "incidents which originated the current criminal case" only refers to the crime of aggravated homicide for which Hughes was sentenced in the Mexican Judgment. Hughes murdered Brian McCarthy on February 6, 1994. His body was discovered on February 7, 1994. Hughes did not make the initial telephone call regarding the false tale of kidnaping until the morning of February 8, 1994, after he had returned to the United States. Thus, the telephone call and other efforts to obtain the ransom could not have been part of "the incidents which originated" McCarthy's murder because McCarthy was already dead and the crime of aggravated homicide complete by the time Hughes attempted to extort money from ASI. Put another way, Hughes could easily have committed the crime of attempted extortion without having murdered McCarthy.

Moreover, it is utterly illogical to conclude that the Mexican Appellate Court intended to credit Hughes for the time that he would spend in prison in the United States on the attempted extortion charge

given that, at the time of the Judgment on February 25, 1998, Hughes had not yet been tried, convicted or sentenced on that charge. Further, an examination of the Judgment, in which the Mexican Appellate Court specifies in detail the evidence supporting the aggravated homicide charge, reveals that the actions underlying the extortion charge, i.e., the telephone call and false claims of ransom demands, were not relied upon to prove the murder charge. (Opp., Ex. B.)

In addition, the Appellate Court uses the word "incidents" solely to describe Hughes's actions on the day of McCarthy's murder, not to any conduct that occurred after the murder. For example, the Appellate Court stated, "It is clear that the defendant Edward Ronald Hughes, on the day of the incidents, that is, the day in which he committed the crime against Mr. Brian McCarthy, he had a superiority over Brian McCarthy given by the fire weapon." (Judgment, Ex. B at 68-69.) The Appellate Court also stated that "[a]t the moment of the incidents the active party was the only one who was armed so he had an advantage to the passive party." (Id. at 72.) Thus, applying the reasonable meaning of the terms of the Judgment, it is clear that Hughes is not entitled to credit for the time that he spent in a United States prison for the attempted extortion against his sentence for the crime of aggravated homicide in Mexico.

### F. Probable Cause

The government requesting extradition has the burden of producing "such information as would provide reasonable grounds to believe that the person sought has committed the offense for which extradition is requested." Treaty, art. 8(3)(c); *see also Barapind*, 360 F.3d at 1068-70 (the probable cause element requires the extradition magistrate to find reasonable ground to believe the accused is guilty of the crimes

11

charged). The burden is met if there is *any* evidence warranting the extradition court to make such a finding. *See Barapind*, 360 F.3d at 1068; *Quinn,* 783 F.2d at 790 (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). Further, the requesting nation is not required to present all of its evidence at an extradition hearing. *Quinn*, 783 F.2d at 815.

Where, as here, the fugitive has already been convicted, the conviction is dispositive of the issue of probable cause. *See Haxhiaj v. Hackman*, 528 F.3d 282, 290–291, and fn. 2 (4th Cir. 2008) (applies to even in absentia convictions); *Sidali v. I.N.S.*, 107 F.3d 191, 196 (3rd Cir. 1997); *Spatola v. United States*, 925 F.2d 615, 618 (2nd Cir. 1991); *United States v. Vigil*, 2013 WL 314755, *3 (E.D.Cal. 2013). *See also* Restatement (Third) of the Foreign Relations Law of the United States § 476 comm. b (1987) ("With respect to persons whose extradition is sought after conviction in the requesting state, the [probable cause] requirement is met by proof of the judgment of conviction and, where appropriate, of sentence.")

The Treaty lists the required documents that must be submitted in order to establish probable cause: (1) a statement of the facts of the case; (2) the text of the legal provisions describing the essential elements of an the punishments for the offense, and the provisions relating to the time limits on the prosecution of the offense; (3) identification information regarding the fugitive; (4) a certified copy of the judgment of conviction imposed by Mexico; and (5) a certification of the sentence imposed and a statement indicating which part of the sentence has not been carried out. (Treaty, art. 10.) All of the documentation required by the Treaty has been submitted and is attached to the complaint and formal request for extradition.

In addition, any Mexican documents submitted for extradition purposes, such as depositions, warrants and other papers, must be properly authenticated. "[T]he certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required." 18 U.S.C. § 3190. The documents filed here are accompanied by the certification of John Brennan, Minister Counselor for Consular Affairs at the United States Embassy, attesting to the authenticity of the documents. (Request for Extradition, Ex. 1 at 1-3.)

Accordingly, this Court finds that Mexico has met its burden of producing sufficient evidence to provide reasonable grounds to believe that Hughes committed the crime alleged.

**G.   Statute of Limitations**

Finally, Hughes asserts that article 7 of the Treaty bars his extradition. (Opp. at 6.) Article 6 provides that "[e]xtradition shall not be granted when the prosecution on enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party." (Treaty, art. 6.)

According to Articles 111 to 124 of the Criminal Code of Querétaro, the statute of limitations to enforce the judgment in this case is 15 years. (Opp., Ex. F.) Article 120 of the Criminal Code of Querétaro provides as follows:

> The Statute of limitations to exercise criminal action and security measures shall be continuous, and to that effect they shall begin to run as of the next day after the condemned person flees the administration of justice. If the penalties or security measures deprives or restricts his liberty and if

13

they are not, as of the date the sentence becomes enforceable. (Id.) Hughes relies upon this provision to argue that the statue of limitations began to run when he first "fle[d] the administration of justice," that is, when he failed to comply with the condition of his release on July 4, 1997 that he report for house arrest. (Opp. at 7; Ex. I.) Therefore, Hughes concludes that the 15-year statute of limitations expired on July 4, 2012.

Contrary to Hughes's contention, Mexico's judicial determination with respect to when the statue of limitations began to run was properly calculated pursuant to Mexican law. As noted above, Hughes was initially acquitted of the murder of Brian McCarthy on April 29, 1997. As authorized by Mexican law, the Public Prosecutor appealed the trial judge's ruling. On February 25, 1998, the Appellate Court granted the appeal, modified the April 29, 1997 decision and ruled that Hughes was guilty of the crime of aggravated homicide. He was sentenced that same day to 19 years in prison. Hughes then challenged his conviction by means of an "amparo" appeal, which is similar to a habeas corpus proceeding. On August 4, 1998, the amparo was denied, thus making Hughes's conviction final.

On April 18, 2000, as required by Mexican law, the court in Querétaro, Mexico issued a re-arrest warrant for Hughes, thus imposing the 19-year sentence and authorizing the Mexican authorities to take custody of Hughes to begin serving his sentence. (Opp., Ex. I at 1.) In a judicial order dated July 6, 2000, the Fifth Trial Court originally determined that the statute of limitations for the execution of the prison sentence expired on August 5, 2013, based upon a starting date of August 6, 1998, the date Hughes's conviction became final. (Opp., Ex. G.)

14

However, at the request of the Public Prosecutor, a judge of the Mexican trial court reviewed the Mexican law to determine the statute of limitations and issued a revised order determining that the statute of limitations actually expires on April 18, 2015, based upon a start date of April 18, 2000, the date that the re-arrest warrant was issued. (Opp., Ex. H.) Under Mexican criminal procedure, after Hughes's acquittal on April 29, 1997 and before the April 18, 2000 re-arrest warrant, there was no valid warrant to take Hughes into custody. (See Governments Supplemental Notice of Lodging, filed March 4, 2013.)

Moreover, the Mexican court's determination of the applicable statute of limitations is entitled to substantial deference. United States courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty. *See United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 565 (2d Cir. 1963) (the role of a U.S. court is "limited to ensuring that the applicable provisions of the treaty and the governing American statutes are complied with"). "Judicial officers considering extradition requests - and, by extension, district judges considering habeas petitions challenging extradition orders - should not engage in an analysis of the demanding country's laws and procedure, except to the limited extent necessary to ensure that the requirements of the federal extradition statute and the applicable extradition treaty have been satisfied." *Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011). In a recent similar case, the Ninth Circuit gave deference to Mexico's calculation of the statute of limitations based upon "respect for other nations' sovereignty" and the real possibility of "erroneous

interpretation" of other nations' laws. *Sainez v. Venables*, 5889 F.3d 713, 717 (9th Cir. 2009).

Accordingly, the Court finds that the statue of limitations has not expired on the crime of aggravated homicide for which Mexico is seeking Hughes's extradition.

**III. Findings, Conclusions And Certification**

For the reasons discussed above, the Court grants Mexico's request for Hughes's extradition and makes the following findings and conclusions in support of this Memorandum and Order:

1. This Court has jurisdiction over the proceedings;

2. This Court has jurisdiction over Edward Ronald Hughes;

3. There is a valid extradition treaty between the United States and Mexico in full force and effect;

4. The Mexican offense of Aggravated Homicide is an extraditable offense consisting of conduct considered to be criminal in both the United States and Mexico, and which is punishable by deprivation of liberty for a period of more than one year;

5. There is probable cause to believe that Hughes committed the crime of Aggravated Homicide;

6. There are no applicable treaty provisions which bar extradition; and

7. Mexico's formal papers and documents in support of its request for Hughes's extradition are and have been presented in accordance with the laws of the United States of America and the Treaty, and have been translated and authenticated in the manner required by the Treaty.

8. The applicable statute of limitations has not elapsed. The

Court hereby certifies the above findings and conclusions, and the transcripts of the extradition hearing held in this case, to the Secretary of State, pursuant to 18 U.S.C. § 3184.

Dated: March 18, 2013

_____
Marc L. Goldman
United States Magistrate Judge